FILED

2018 APR 12 PM 3: 13

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA

BY LAW

1  ALDEN F. ABBOTT, Acting General Counsel
2  ELSIE KAPPLER, *pro hac vice*
   ekappler@ftc.gov
3  SANGJOON HAN, *pro hac vice*
   shan@ftc.gov
4
   FEDERAL TRADE COMMISSION
5  600 Pennsylvania Ave. NW, CC-9528
6  Washington, DC 20580
   Tel: (202) 326-2466, -2495; Fax: (202) 326-3197
7  BARBARA CHUN, Local Counsel, Cal. Bar No. 186907
8  bchun@ftc.gov
   FEDERAL TRADE COMMISSION
9  10990 Wilshire Blvd. Suite 400
10 Los Angeles, CA 90024
   Tel: (310) 824-4312; Fax: (310) 824-4380
11 Attorneys for Plaintiff
12 FEDERAL TRADE COMMISSION

13              UNITED STATES DISTRICT COURT
                CENTRAL DISTRICT OF CALIFORNIA
14

LODGED

2018 APR 1 PM 12: 55

15 FEDERAL TRADE COMMISSION,        Case No.  SACV18-00597 JLS (KESx)
16
17          Plaintiff,
                                      COMPLAINT FOR
18       v.                           PERMANENT INJUNCTION
                                      AND OTHER EQUITABLE
19 AMERICAN HOME SERVICING            RELIEF
   CENTER, LLC,
20
21 CAPITAL HOME ADVOCACY
   CENTER,
22
23 NATIONAL ADVOCACY CENTER,
   LLC,
24
25 JAIME ABURTO, a/k/a James Aburto,
   and Jamie Aburto, individually, as an
26 officer of American Home Servicing
   Center, LLC and National Advocacy
27 Center, LLC, and d/b/a A.H.S.C.,
28

1

American Home Servicing Center, Local Page, NAC, National Servicing Center, NSC Processing, and Secured Processing,

MARCUS FIERRO, JR., individually, as a member of American Home Servicing Center, LLC and National Advocacy Center, LLC, and d/b/a A.H.S.C. and American Home Servicing Center,

EVE CHRISTINE RODRIGUEZ, a/k/a Elizabeth Davis, Elizabeth Powers, Christina Rodriguez, Christine Rodriguez, and Elizabeth Rodriguez, individually, as a manager of American Home Servicing Center, LLC, a member of Capital Home Advocacy Center, and d/b/a National Advocacy Group,

and SERGIO LORENZO RODRIGUEZ, a/k/a Sergio Lawrence, individually, as a manager of American Home Servicing Center, LLC, a member of Capital Home Advocacy Center, and d/b/a National Advocacy Group,

     Defendants.

Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

1.    The FTC brings this action under Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), and the 2009 Omnibus Appropriations Act, Public Law 111-8, Section 626, 123 Stat. 524, 678 (Mar. 11, 2009) ("Omnibus Act"), as clarified by the Credit Card Accountability Responsibility and Disclosure Act of 2009, Public Law 111-24, Section 511, 123 Stat. 1734, 1763-64 (May 22, 2009) ("Credit Card Act"), and amended by the

1   Dodd-Frank Wall Street Reform and Consumer Protection Act, Public Law 111-

2   203, Section 1097, 124 Stat. 1376, 2102-03 (July 21, 2010) ("Dodd-Frank Act"),

3   12 U.S.C. § 5538, to obtain temporary, preliminary, and permanent injunctive

4   relief, rescission or reformation of contracts, restitution, the refund of monies paid,

5   disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts

6   or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the

7   Mortgage Assistance Relief Services Rule ("Regulation O"), 12 C.F.R. Part 1015,

8   in connection with the marketing and sale of mortgage assistance relief services.

9                              **JURISDICTION AND VENUE**

10          2.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§

11   1331, 1337(a), and 1345; 15 U.S.C. §§ 45(a), 53(b); and Section 626 of the

12   Omnibus Act, as clarified by Section 511 of the Credit Card Act, and amended by

13   Section 1097 of the Dodd-Frank Act, 12 U.S.C. § 5538.

14          3.     Venue is proper in this District under 28 U.S.C. § 1391(b)(1), (b)(2),

15   (c)(1), (c)(2), and (d), and 15 U.S.C. § 53(b).

16                                   **PLAINTIFF**

17          4.     Plaintiff FTC is an independent agency of the United States

18   Government created by statute.  15 U.S.C. §§ 41-58.  The FTC enforces Section

19   5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or

20   practices in or affecting commerce.  In addition, pursuant to 12 U.S.C. § 5538, the

21   FTC also enforces Regulation O, which requires mortgage assistance relief

22   services providers to make certain disclosures, prohibits certain representations,

23   and generally prohibits the collection of an advance fee.

24          5.     The FTC is authorized to initiate federal district court proceedings, by

25   its own attorneys, to enjoin violations of the FTC Act and Regulation O; and to

26   secure such equitable relief as may be appropriate in each case, including

27

28                                        3

1    rescission or reformation of contracts, restitution, the refund of monies paid, and

2    the disgorgement of ill-gotten monies.  15 U.S.C. §§ 53(b); § 626, 123 Stat. 678, as

3    clarified by § 511, 123 Stat. 1763-64, and amended by § 1097, 124 Stat. 2102-03,

4    12 U.S.C. § 5538.

5                                            **DEFENDANTS**

6        6.     Defendant American Home Servicing Center, LLC ("American

7    Home") is a California limited liability company that previously operated out of

8    505 North Tustin Avenue, Suite 212, Santa Ana, CA  92705 and 1851 1st Street,

9    Suite 900, Santa Ana, CA  92705.  At times material to this Complaint, acting

10   alone or in concert with others, or as part of the common enterprise described in

11   paragraphs 16 through 21, American Home has advertised, marketed, provided,

12   offered to provide, or arranged for others to provide mortgage assistance relief

13   services, as defined in 12 C.F.R. § 1015.2.  American Home transacts or has

14   transacted business in this District and throughout the United States.

15       7.     Defendant Capital Home Advocacy Center ("Capital Home") is a

16   California corporation with its principal place of business at 1809 East Dyer Road,

17   Suite 301, Santa Ana, CA  92705 ("1809 East Dyer").  At times material to this

18   Complaint, acting alone or in concert with others, or as part of the common

19   enterprise described in paragraphs 16 through 21, Capital Home has advertised,

20   marketed, provided, offered to provide, or arranged for others to provide mortgage

21   assistance relief services, as defined in 12 C.F.R. § 1015.2.  Capital Home transacts

22   or has transacted business in this District and throughout the United States.

23       8.     Defendant National Advocacy Center, LLC ("National Advocacy") is

24   a California limited liability company with its principal place of business at 301

25   West La Habra Blvd., Suite 2D, La Habra, CA  90631.  At times material to this

26   Complaint, acting alone or in concert with others, or as part of the common

27

28                                                 4

enterprise described in paragraphs 16 through 21, National Advocacy has advertised, marketed, provided, offered to provide, or arranged for others to provide mortgage assistance relief services, as defined in 12 C.F.R. § 1015.2. National Advocacy transacts or has transacted business in this District and throughout the United States.

9.    Defendant Jaime Aburto, a/k/a James Aburto and Jamie Aburto, d/b/a A.H.S.C., American Home Servicing Center, Local Page, NAC, National Servicing Center, NSC Processing, and Secured Processing, has been a principal of American Home and National Advocacy.  At all times material to this Complaint, acting alone or in concert with others, and through interrelated entities described in paragraphs 6 through 8, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  Jaime Aburto resides in this District and, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

10.    Defendant Marcus Fierro, Jr., d/b/a A.H.S.C. and American Home Servicing Center, has been a principal of American Home and National Advocacy.  At all times material to this Complaint, acting alone or in concert with others, and through interrelated entities described in paragraphs 6 through 8, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  Marcus Fierro, Jr. resides in this District and, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

11.    Defendant Eve Christine Rodriguez, a/k/a Elizabeth Davis, Elizabeth Powers, Christine Rodriguez, Christina Rodriguez, and Elizabeth Rodriguez ("Christina Rodriguez"), has been an officer of American Home and Capital

1  Home.  At all times material to this Complaint, acting alone or in concert with
2  others, and through interrelated entities described in paragraphs 6 through 8, she
3  has formulated, directed, controlled, had the authority to control, or participated in
4  the acts and practices set forth in this Complaint.  Christina Rodriguez resides in
5  this District and, in connection with the matters alleged herein, transacts or has
6  transacted business in this District and throughout the United States.

7      12.    Defendant Sergio Lorenzo Rodriguez, a/k/a Sergio Lawrence, d/b/a
8  National Advocacy Group ("Sergio Rodriguez"), has been a principal of Capital
9  Home.  At all times material to this Complaint, acting alone or in concert with
10  others, and through interrelated entities described in paragraphs 6 through 8, he
11  has formulated, directed, controlled, had the authority to control, or participated in
12  the acts and practices set forth in this Complaint.  Sergio Rodriguez resides in this
13  District and, in connection with the matters alleged herein, transacts or has
14  transacted business in this District and throughout the United States.

15         **INDIVIDUAL ACTIVES PRECEDING COMMON ENTERPRISE**

16      13.    In or around 2014, Defendant Jaime Aburto, with two non-defendants,
17  began doing business under the name "National Servicing Center."  As described
18  below, National Servicing Center advertised, marketed, sold, provided, or offered
19  to provide mortgage assistance relief services (MARS).  National Servicing
20  Center operated from 2112 East 4th Street, Suite 210, Santa Ana, CA  92705,
21  1820 East Garry Avenue, Suite 215, Santa Ana, CA  92705, and 18685 Main
22  Street, #101-445, Huntington Beach, CA  92684.  National Servicing Center is
23  also the name of a unit of the U.S. Department of Housing and Urban
24  Development.

25      14.    In May 2015, Defendant Aburto leased an office space at 505 North
26  Tustin Avenue, Suite 212, Santa Ana, CA  92705 ("North Tustin Office").

27
28

6

National Servicing Center paid the security deposit and the June 2015 rent for the North Tustin Office.

15.     That same month, Defendants Aburto and Fierro began doing business under the name "American Home Servicing Center."  As described below, American Home Servicing Center, advertised, marketed, sold, provided, or offered to provide MARS.  American Home Servicing Center operated out of the North Tustin Office.

## COMMON ENTERPRISE

16.     Defendants American Home, National Advocacy, and Capital Home ("Corporate Defendants") have been operating as a common enterprise to engage in the deceptive acts and practices alleged below through interrelated companies that have common ownership, control persons, managers, business functions, employees, and office locations that commingle funds; and share one another's marketing materials.  Therefore, each is jointly and severally liable for the acts and practices alleged below.

17.     Defendants Aburto, Fierro, Christina Rodriguez, and Sergio Rodriguez have formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the common enterprise.

18.     In November 2015, Defendant Fierro filed Articles of Incorporation for Defendant American Home with the California Secretary of State.  Fierro listed 14024 Magnolia St., #200, Westminster, CA  92683 as the address for American Home.  Defendant Christina Rodriguez was an officer of American Home ("Chief Operating Officer"), and Sergio Rodriguez was an officer or control person ("Compliance Manager").

19.     In November 2015, Defendant Fierro filed Articles of Incorporation for National Advocacy with the California Secretary of State.  He listed 14024

7

1    Magnolia St., #200, Westminster, CA 92683 as the address. As described below,

2    National Advocacy advertised, marketed, sold, provided, or offered to provide

3    mortgage assistance relief services (MARS).

4         20.    In September 2016, Defendant Sergio Rodriguez filed articles of

5    incorporation for Capital Home with the California Secretary of State. Capital

6    Home operates from 1809 East Dyer. On September 1, 2016, National Advocacy

7    paid the rent for 1809 East Dyer. Christina Rodriguez is the owner of Capital

8    Home.

9         21.    The Corporate Defendants commingled bank accounts. They also

10    operated from the same office spaces, with several different companies paying the

11    rent, and shared some of the same employees. Significantly, the common

12    enterprise, controlled by the individual Defendants, continuously operated the

13    scheme described below.

14                    **COMMERCE**

15         22.    At all times material to this complaint, Defendants have maintained a

16    substantial course of trade in or affecting commerce, as "commerce" is defined in

17    Section 4 of the FTC Act, 15 U.S.C. § 44.

18            **DEFENDANTS' BUSINESS PRACTICES**

19         23.    From at least May 2015 to the present, Defendants, through operation

20    of the common enterprise, have engaged in a course of conduct to advertise,

21    market, sell, provide, or offer to provide, or arrange for others to provide MARS,

22    including mortgage loan modification services and services to stop or avoid

23    foreclosure.

24          **Overview of Mortgage Modification Programs**

25         24.    Following the subprime mortgage crisis of 2008, the federal

26    government created a number of programs designed to assist homeowners who

27

28

were no longer able to afford their mortgage payments.  These programs included the Home Affordable Modification Program, or HAMP, which accepted applications through the end of 2016.

25.     Under HAMP, a participating loan servicer could obtain program incentives by providing loan modifications to homeowners who were facing imminent default because of a documented financial hardship, such as a job loss, divorce, or serious illness that significantly decreased income or increased expenses.

26.     These loan modifications reduced monthly payments to a sustainable amount (as defined by HAMP) through interest rate reductions, loan term extensions, and in some instances reductions in principal balance.

27.     The loan servicer had broad discretion to deny a loan modification under HAMP.  For example, it could deny a modification if it determined, based on a formula that used proprietary inputs, that the net present value of the modified loan was less than the anticipated value of a foreclosure.

28.     The loan servicer could also deny a loan modification if it appeared that the homeowner intentionally defaulted on a loan, or presented insufficient documentation of hardship.

29.     Not all loan servicers participated in the HAMP program.

30.     If a participating loan servicer granted a modification, the homeowner had to make three timely trial payments for the modified amount before the modification was supposed to become permanent.

31.     In addition to HAMP, loan servicers often have their own proprietary modification programs.  These programs also require hardship and imminent default, and include a net present value analysis.  To the extent that they differ from HAMP modifications, they include more grounds to deny a modification—

9

1    for example, if the underlying agreement with the investor who had bought the

2    loan precludes a modification.

3    **Defendants' Marketing**

4          32.    Defendants offer assistance with mortgage loan relief and solicit

5    inbound telemarketing calls from distressed homeowners.  To sell consumers on

6    their loan modification services, they claim a 99% success rate and guarantee

7    results regardless of the individual consumer's situation.  Shortly after consumers

8    complete an application and submit documentation, Defendants inform those

9    consumers that they have been confirmed for a specific mortgage modification,

10    resulting in substantial savings.  They then direct the consumers to pay Defendants

11    several thousand dollars in "closing costs."

12    **Initial Solicitation**

13          33.    Defendants solicit calls from distressed homeowners through both the

14    mail and internet advertising.

15          34.    For example, in December 2015, American Home sent 28,000

16    distressed homeowners a flyer stating they might be "eligible to receive

17    immediate assistance," including "a lower interest rate, principal reduction, HARP

18    2.9 Refinance, or Elimination of 2nd Mortgage." *See* Exhibit A.

19          35.    The flyer envelope read "Notice Regarding Your Mortgage Loan" and

20    "WARNING: $2,000 FINE, 5 YEARS IMPRISONMENT, OR BOTH FOR ANY

21    PERSON INTERFERING OR OBSTRUCTING WITH DELIVERY OF THIS

22    LETTER U.S. MAIL TTT. 18 SEC. 1702 U.S. CODE."  The flyer directed

23    consumers to "Call Today."

24          36.    Defendants also solicit consumers through their websites.  For

25    example, as of June 2, 2017, the National Advocacy website

26    (www.nationaladvocacycenters.org) contained the following language:  "Our

27

28

1   company is dedicated to advocating for homeowners by working with mortgage

2   investors, mortgage servicing lender's [sic], and the government to prepare and

3   process Government Home Loan programs and Home Relief programs."

4         37.    The Capital Home website (www.capitalhomeadvocacycenter.com)

5   contained, as of May 19, 2017, the following language:

6         A.    "Our company is dedicated in advocating for homeowners by

7               working with mortgage investors, mortgage servicing lender's

8               [sic], and the government to prepare and process Government

9               Home Loan programs and Home Loan Relief programs."

10        B.    "Need Mortgage Help Today?  Capital Home Advocacy Center

11              is designed to help you get mortgage help and avoid

12              foreclosure.  There is real help available.  Get started today.

13              Real Help is Available, Right Now Call Us at 1-888-238-3303."

14        C.    "FORECLOSURE DEFENSE DEPARTMENT."

15        D.    "We've helped over thousand [sic] home loans for families"

16        E.    "We've proudly earned a 4.8 out of 5 customer satisfaction

17              rating"

18        F.    "98% of those surveyed would recommend CHAC to friends

19              and family."

20        G.    "Paying off mortgage [sic] and the connected legal systems can

21              be a tricky business at times. The ins and outs of mortgage

22              payments and the aspects involved in facilitating the payments

23              can leave one dumbfounded or completely blank. Many are not

24              aware of how dilemmas and legalities in mortgage payments

25              can be resolved and the proceedings, [sic] take place – this is

26              why a professional advocacy center engagement is crucial

27

28                                        11

should one face the skeins of mortgage payment and legitimate aspects related to it. And, this is where Capital Home Advocacy Center plays its role."

H.   "Capital Home Advocacy Center are [sic] experts in preparing, specifically, the center is exclusive [sic] in mortgage services [sic] document preparation inclusive of application for Government Home Loan Refinance programs and Government Home Loan Relief programs."

38.   By November 1, 2017, the Capital Home website also included a list of "Media Partners": Freddie Mac, "Document Preparation Services," MakingHomeAffordable.gov, "Great Place to Work BEST 2017," yelp, and Better Business Bureau:

39.   The home page identified Capital Home as a BBB Accredited Business.

40.   Capital Home, however, is not accredited by the BBB, and has a F rating.

41.   The Capital Home website listed "Lenders We Work With," including the largest mortgage lenders: Bank of America, CapitalOne, Chase, Citi Mortgage, Carrington, Nationstar Mortgage, Cenlar, Ocwen, US Bank, HSBC, Wells Fargo Home Mortgage, Mr. Cooper, ditech, Freedom Mortgage, AmeriQuest, Green Tree, Rushmore, Quicken Loans, Loan Care, and "USDA Approved Lender":

12

Lenders We Work With

42.     Additionally, the Capital Home website included a page called Services, stating, "Home loan modification provides a new type of payment to homeowners to pay at a lower rate. … The payment is dwindled to 31% of the home owner's [sic] income to loan ratio."

43.     Defendants run the website, NationalMortgageReliefCenter.org.  As of October 2, 2017, the website identified its address as 333 City Blvd West Orange, CA  92868.  Calls to the listed phone number, 888-416-1142, go directly to National Advocacy Center.  The website states: "Millions of home owners [sic] were able to secure *Affordable Loan Modification* since 2007"; "Get help **NOW** before the program expires!!"  It continues, "Find Out How To Avoid Foreclosure & Reduce Your Payments."

44.     Neither Capital Home's website nor National Advocacy's website make the disclosures required by Regulation O (see paragraph 105).  Similarly, American Home's mailers did not make the disclosures required by Regulation O (see paragraph 106).

13

**Sales Pitch**

45.     Defendants' sales agents pitch their services over the telephone and through email to consumers who call in response to Defendants' initial solicitations.

**Defendants Offer Mortgage Assistance Relief Services**

46.     When consumers call in response to the initial solicitation, Defendants offer assistance with mortgage loan relief, and represent that consumers who hire them are likely to obtain a loan modification that will result in a monthly payment the consumer can afford.

47.     For example, on October 24 and 25, 2017, Defendants' sales agent made the following statements to an undercover FTC Investigator, posing as a distressed consumer:

A.     "[W]e can negotiate on your behalf."

B.     "[W]e can negotiate the terms and conditions.  … we can reduce the interest rate, whereas it can also reduce the monthly payment."

C.     "[W]e can negotiate the terms and the condition of your loan restructure.  We can negotiate the interest rate."

D.     "We have specialists here to assist you on obtaining a modification."

E.     "[W]e also exhaust all of your homeowner bill of rights so that we can negotiate the best terms and conditions for you, that put you in the best financial situation with your lender."

F.     "[W]e do have homeowners that try to obtain modifications themselves or any type of program themselves.  Nine – eight out of ten times, nine out of ten times, our homeowners can't

14

1    render that positive outcome that they were expecting.  That's

2    why they call us because they don't know how to exhaust all of

3    their homeowner bill of rights.  Obtaining those programs is a

4    tedious job.  So that's why we come in and we assist

5    homeowners to do so."

6        G.    Q: "So you'd be able to reduce my monthly payment?"

7            A: "Yes.  That's if you've fallen behind."

8        48.    Separately, on October 25, 2017, Defendant Christina Rodriguez told

9    the same Investigator that: "What we do here, [FTC Investigator's undercover

10   name], is we help homeowners such as yourself whom [sic] are struggling to make

11   their mortgage payment.  We can do a loan restructure.  The loan restructure will

12   give you the lower monthly payment and a lower interest rate to get you back on

13   track."

14   **Defendants Claim Consumers Are Highly Likely to Get a Modification**

15       49.    During the same initial sales pitch, Defendants represent that the

16   homeowners who call in are nearly certain to obtain loan modifications, and that

17   Defendants' services are guaranteed.

18       50.    For example, on October 24 and 25, 2017, a Capital Home Advocacy

19   representative made the following statements to an FTC Investigator posing as a

20   distressed homeowner:

21       A.    "[W]e guarantee our services."

22       B.    "And like I said, we guarantee our services."

23       C.    "Our success rate is very high."

24       D.    "[C]hance is that – that we are able to help you is, of course,

25           you know, very high."

26

27                           15

28

E.   Q:  "And you'd be able to guarantee it you said earlier?"  A: "Yes, our services."

F.   Q:  (Referencing email from Capital Home, as described below) "[I]t sounds like if you take my case, there's a 99 percent chance of a modification."  A:  "Yes."

51.   Defendants routinely tell consumers that they have a 99% success rate, and that they will obtain a modification for them.

52.   Across all participating loan servicers, the approval rate for HAMP was generally less than 50 percent.

53.   On November 2, 2017, a National Advocacy Center representative made the following statements to an FTC Investigator posing as a distressed homeowner:

A.   "[W]hat we can do is assist you on lowering that interest rate and also lowering your mortgage payments, which will be approximately $835.43 [as compared to $1,100 amount provided by FTC Investigator as current payment]."

B.   "[W]e're going to go ahead and work on getting, you know, everything restructured for you."

54.   During this initial sales pitch, Defendants explain their process takes from 30 to 90 days, and that the homeowner will not have to pay the servicer during this time.

55.   For example, on October 25, 2017, Defendants' sales agent made the following statements to an FTC Investigator posing as a distressed homeowner:

A.   "So the process takes approximately 90 days.  So during those 90 days, of course, you're not making payments to the lender."

16

B.  Q: "[F]or that 30- to 90-day period, I wouldn't be paying my loan servicer?"  A: "Yes.  You are not – you're not required to pay them. ... I can't advise you not to pay them, but I'm letting you know that in that time that you're being reviewed, you're not required to pay them.  You're safe."

**Follow-Up Email Claims to Entice Consumers to Apply**

56.  Defendants follow the initial sales pitch with an email that makes additional representations regarding their likelihood of success and their offer of mortgage assistance relief services (MARS).  *See* Exhibit B.

57.  For example, on October 24, 2017, one of Defendant's sales representatives sent an email to the FTC's undercover Investigator stating:

A.  **"We have 98.9% approval rate with most Lenders."**

B.  "We will negotiate your existent loan terms to better suit your present financial situation (**reduce interest rate, reduced monthly payment**)."

C.  "We will negotiate your delinquent balance (to **reduce, or forgive all junk fees accumulated by your default**)."

D.  "[I]f you qualify for a Principal Balance Reduction, we will negotiate in your behalf."

E.  "*Once your file is submitted to your lender, any negative action against your property will cease.  Including auction of your property.*"

58.  On November 1, 2017, another representative sent an email (*See* Exhibit C) to the same undercover FTC Investigator, stating:

17

A.    "We will negotiate your existent loan terms to better suit your present financial situation (reduce interest rate, reduced monthly payment)."

B.    "We will negotiate your delinquent balance (to reduce, or forgive all junk fees accumulated by your default)."

C.    "[I]f you qualify for a Principal Balance Reduction, we will negotiate in your behalf."

D.    *"Once your file is submitted to your lender, any negative action against your property will cease."*

59.    During or after the phone call, Defendants send the homeowner a list of required documents. One of these documents is a form titled "Making Home Affordable Program Request For Mortgage Assistance (RMA)" that appears to be from an official government website, as suggested by the header:

**Making Home Affordable Program**
**Request For Mortgage Assistance (RMA)**



MAKING HOME AFFORDABLE.gov

If you are experiencing a financial hardship and need help, you must complete and submit this form along with other required documentation to be considered for foreclosure prevention options under the Making Home Affordable (MHA) Program. You must provide information about yourself and your intentions to either keep or transition out of your property; a description of the hardship that prevents you from paying your mortgage(s); information about all of your income, expenses and financial assets; whether you have declared bankruptcy; and information about the mortgage(s) on your principal residence and other single family real estate that you own. Finally, you will need to return to your loan servicer (1) this completed, signed and dated Request for Mortgage Assistance (RMA); and (2) completed and signed IRS Form 4506-T or 4506T-EZ; and (3) all required income documentation identified in Section 4.

When you sign and date this form, you will make important certifications, representations and agreements, including certifying that all of the information in this RMA is accurate and truthful.

*See* Exhibit D. In reality, Defendants use only the first page of this form, followed by several of their own documents. Homeowners therefore are not provided with the warnings in the official version of this document, including the warning that intentional default could disqualify them from getting a modification, and the warning against persons and organizations charging fees for modification services.

18

60.     Instead, Defendants provide homeowners a schedule of payments for "the preparation work and HAMP modification to be performed" and tell them, "All fees are standard for Fannie Mae and Freddie Mac Government Modifications," although no such standard fees exist.

61.     Defendants create a false sense of urgency to lure consumers into their scheme.  In numerous cases, they encourage homeowners to send in their paperwork while still on the phone.

**Defendants Falsely Tell Consumers They Are Confirmed for a Modification**

62.     In numerous instances, once a homeowner sends her documents after the initial sales pitch, Defendants repeatedly represent that she is confirmed for a modification.

63.     First, Defendants state over the phone that they have contacted the loan servicer and confirmed that the homeowner will receive a modification.

64.     However, at this point in time Defendants have not contacted the loan servicer, or taken any other steps to determine whether the homeowner will obtain a modification.

65.     Second, from at least February 3, 2015 to October 21, 2016, Defendants sent consumers a document titled "Eligibility Confirmation." *See* Exhibit E.  The Eligibility Confirmation stated, "You are confirmed for the following government program, **HAMP** (Home Affordable Modification Program." In some instances, the document also stated that consumers were confirmed for the "**PRP** (Principal Reduction Program)."

66.     The Eligibility Confirmation also stated, "Your investor and servicing bank will recoup the loss from your loan restructure from a government TARP fund because you meet the guidelines for this government fund."

19

67.     The Eligibility Confirmation also stated that "[t]he process from beginning to end takes approximately 3-4 months."

68.     The Eligibility Confirmation encouraged homeowners to intentionally default on their mortgage payments by stating, "To move forward you will need to make the choice, and not make [two months of] mortgage payments to meet the **"imminent default"** requirement for this program." (Emphasis in original.)  This document did not warn consumers that they might lose their homes and damage their credit if they stop paying their mortgages.  This document did not warn consumers that engaging in strategic default might make them ineligible for a loan modification.

69.     The Eligibility Confirmation instructed homeowners to "pay the exact amount of your Trial Period Plan payments." Below this instruction was a timetable with the exact trial payment amounts and the trial payment dates, which start about three months from the date of the Eligibility Confirmation.  The Eligibility Confirmation told homeowners, "[a]fter you make all trial payments on time, this loan restructure will be permanent."

70.     Third, from at least November 3, 2014 to October 21, 2016, Defendants sent consumers a document titled "Proprietary form used for consumer results." *See* Exhibit F.  The Proprietary Form made a number of additional specific representations regarding the loan term (which supposedly remains the same), the new lower interest rate, a principal reduction amount, and the new monthly payment amount.  The Proprietary Form gave a new payment amount hundreds of dollars less than the existing payment, and purported to save consumers tens of thousands of dollars over the course of the loan.

71.     The Proprietary Form also contained Defendant's fee, characterized as "Closing Costs."  This fee was typically several thousand dollars, and varied

based on the homeowner's ability to pay.  Defendants gave some homeowners the option of splitting up the fee into multiple payments, if they paid a "convenience fee" of several hundred dollars.

72.     None of these forms made any of the disclosures required by Regulation O (see paragraph 108).

73.     After HAMP stopped accepting applications, Defendants stopped using the Eligibility Confirmation and Proprietary Form, but continued to make substantially the same representations, telling consumers they were confirmed for the "Traditional Home Modification Program" or some other purported government program.

### Post-Sale

74.     Defendants tell consumers not to communicate with their lenders. They also tell consumers that they should stop paying their loan servicers for two or three months, and that they need only pay the trial payment amount after that.

75.     Defendants tell consumers to pay Defendants in the interim for their purported service, and send consumers payment instructions.  In numerous instances, consumers have paid Defendants these advance fees.  In numerous instances, after consumers have enrolled in Defendants' programs and paid the requested advance fees, Defendants have failed to obtain a loan modification, principal reduction, or other relief to stop foreclosure or make consumers' mortgage payments affordable.

76.     Consumers who determine they have not actually obtained the promised loan modifications frequently ask for refunds.  In response, Defendants tell them that they failed to meet their obligations under the program or to disclose critical information, and that they are therefore not eligible for refund.

21

77.    Defendants rarely provide refunds, and in those instances where they do, provide only partial refunds.

78.    In numerous instances, consumers enrolled in Defendants' programs have suffered significant economic injury, including:  paying thousands of dollars to Defendants and receiving little or no service in return; incurring additional high-interest loans to cover the program fees; incurring additional late fees; suffering damage to their credit ratings; going into foreclosure; and, in some instances, even losing their homes.

79.    In addition to knowledge obtained through his control of and participation in the scheme, Aburto was served with one or more legal actions that provided notice of the misrepresentations being made by his company.

80.    In addition to knowledge obtained through his control of and participation in the scheme, Fierro was served with one or more legal actions that provided notice of the misrepresentations being made by his company.

81.    Christina Rodriguez personally made misrepresentations, supervised telemarketers as they were making misrepresentations, and instructed telemarketers to make misrepresentations.  She also responded directly to consumer complaints. She also approved the language of the flyer marked, "Notice Regarding Your Mortgage Loan."

82.    Sergio Rodriguez personally made misrepresentations, supervised telemarketers as they were making misrepresentations, and instructed telemarketers to make misrepresentations.  He also responded directly to consumer complaints.

## VIOLATIONS OF THE FTC ACT

83.    Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

22

84.     Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

## COUNT I

**(Deceptive Representations That Defendants Are Highly Likely to Obtain Loan Modifications for Consumers)**

85.     In numerous instances since at least 2015, in connection with the advertising, marketing, promotion, offering for sale, or sale or performance of mortgage assistance relief services, Defendants have represented, directly or indirectly, expressly or by implication, that they are likely to obtain loan modifications for consumers that will make their payments substantially more affordable or help them avoid foreclosure.

86.     In truth and in fact, Defendants are not likely to obtain loan modifications for consumers that will make their payments substantially more affordable or help them avoid foreclosure.

87.     Therefore, Defendants' representations as set forth in Paragraph 85 are false and misleading, and constitute a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT II

**(Deceptive Representations Regarding Confirmation for Loan Modification Programs)**

88.     In numerous instances since at least 2015, in connection with the advertising, marketing, promotion, offering for sale, or sale or performance of mortgage assistance relief services, Defendants have represented, directly or indirectly, expressly or by implication, that consumers had been confirmed for a specific loan modification.

23

89.     In truth and in fact, consumers had not been confirmed for the represented loan modification.

90.     Therefore, Defendants' representations as set forth in Paragraph 88 are false and misleading, and constitute a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**COUNT III**

**(Deceptive Representations Regarding Affiliation with the Government or Other Entities)**

91.     In numerous instances since at least 2015, in connection with the advertising, marketing, promotion, offering for sale, or sale or performance of mortgage assistance relief services, Defendants have represented, directly or indirectly, expressly or by implication, that they are affiliated with the government or other entities such as the Better Business Bureau.

92.     In truth and in fact, Defendants are not affiliated with the government or other entities such as the Better Business Bureau.

93.     Therefore, Defendants' representations as set forth in Paragraph 91 are false and misleading, and constitute a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**VIOLATIONS OF REGULATION O**

94.     In 2009, Congress directed the FTC to prescribe rules prohibiting unfair or deceptive acts or practices with respect to mortgage loans.  Omnibus Act, § 626, 123 Stat. 678, as clarified by Credit Card Act, § 511, 123 Stat. 1763-64.  Pursuant to that direction, the FTC promulgated the MARS Rule, 16 C.F.R. Part 322, all but one of the provisions of which became effective on December 29, 2010.  Title X of the Dodd-Frank Act, 124 Stat. 1376, transferred the FTC's rulemaking authority under the Omnibus Act, as amended, to the Consumer

24

Financial Protection Bureau ("CFPB").  On December 16, 2011, the CFPB republished the MARS Rule as Regulation O, 12 C.F.R. Part 1015.

95.    Regulation O defines "mortgage assistance relief service provider" as "any person that provides, offers to provide, or arranges for others to provide, any mortgage assistance relief service" other than the dwelling loan holder, the servicer of a dwelling loan, or any agent or contractor of such individual or entity. 12 C.F.R. § 1015.2.

96.    Regulation O prohibits any mortgage assistance relief service provider from requesting or receiving payment of any fee or other consideration until the consumer has executed a written agreement between the consumer and the consumer's loan holder or servicer that incorporates the offer that the provider obtained from the loan holder or servicer.  12 C.F.R. § 1015.5(a).

97.    Regulation O prohibits any mortgage assistance relief service provider from representing, expressly or by implication, in connection with the advertising, marketing, promotion, offering for sale, sale, or performance of any mortgage assistance relief service, that a consumer cannot or should not contact or communicate with his or her lender or servicer.  12 C.F.R. § 1015.3(a).

98.    Regulation O prohibits any mortgage assistance relief service provider from misrepresenting, expressly or by implication, any material aspect of any mortgage assistance relief service, including but not limited to:

        A.    The likelihood of negotiating, obtaining, or arranging any represented service or result.  12 C.F.R. § 1015.3(b)(1);

        B.    The amount of time it will take the mortgage assistance relief service provider to accomplish any represented service or result. 12 C.F.R. § 1015.3(b)(2);

25

C.  That a mortgage assistance relief service is affiliated with, endorsed or approved by, or otherwise associated with (i) the United States government, (ii) any governmental homeowner assistance plan (iii) any Federal, State, or local government agency, unit, or department, (iv) any nonprofit housing counselor agency or program, (v) the maker, holder, or servicer of the consumer's dwelling loan, or  (vi) any other individual, entity, or program.  12 C.F.R. § 1015.3(b)(3)(i)-(vi);  and

D.  The consumer's obligation to make scheduled periodic payments or any other payments pursuant to the terms of the consumer's dwelling loan.  12 C.F.R. § 1015.3(b)(4).

99.  Regulation O prohibits any mortgage assistance relief service provider from failing to place a statement clearly and prominently in every general commercial communication disclosing that (i) the provider is not associated with the government and its service is not approved by the government or any lender, and (ii) in certain cases, a statement disclosing that the lender may not agree to modify a loan, even if the consumer uses the provider's service.  12 C.F.R. §§ 1015.4(a)(1)-(2).

100.  Regulation O prohibits any mortgage assistance relief service provider from failing to place a statement clearly and prominently in every consumer-specific commercial communication (i) confirming that the consumer may stop doing business with the provider or reject an offer of mortgage assistance without having to pay for the services, (ii) disclosing that the provider is not associated with the government and its service is not approved by the government or any lender, (iii) in certain cases, a statement disclosing that the lender may not agree to modify a loan, even if the consumer uses the provider's service, and (iv) in certain

26

cases, a statement disclosing that if they stop paying their mortgage, consumers may lose their home or damage their credit.  12 C.F.R. §§ 1015.4(b)(1)-(3) and (c).

101.   Pursuant to the Omnibus Act, § 626, 123 Stat. 678, as clarified by the Credit Card Act, § 511, 123 Stat. 1763-64 and amended by the Dodd-Frank Act, § 1097, 124 Stat. 2102-03, 12 U.S.C. § 5538, and pursuant to Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of Regulation O constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT IV

### (Advance Payments for Mortgage Assistance Relief Services)

102.   In numerous instances since at least 2015, in the course of providing, offering to provide, or arranging for others to provide mortgage assistance relief services, Defendants requested or received payment before consumers executed written agreements with their loan holders or servicers that incorporated the offers obtained by Defendants, in violation of Regulation O, 12 C.F.R. § 1015.5(a).

## COUNT V

### (Prohibited Representations Regarding Consumer Communications with Lender)

103.   In numerous instances since at least 2015, in the course of providing, offering to provide, or arranging for others to provide mortgage assistance relief services, Defendants, in violation of Regulation O, 12 C.F.R. § 1015.3(a), have represented, expressly or by implication, that a consumer cannot or should not contact or communicate with his or her lender or servicer.

27

## COUNT VI

**(Material Misrepresentations Regarding Aspects of Defendants' Services)**

104.   In numerous instances since at least 2015, in the course of providing, offering to provide, or arranging for others to provide mortgage assistance relief services, Defendants, in violation of Regulation O, 12 C.F.R. § 1015.3(b)(1)-(4), have misrepresented, expressly or by implication, material aspects of their services, including, but not limited to:

    A.    Defendants' likelihood of obtaining mortgage loan modifications for consumers that will make their payments substantially more affordable;

    B.    The amount of time it will take the mortgage assistance relief service provider to accomplish any represented service or result;

    C.    That Defendants are affiliated with, endorsed or approved by, or otherwise associated with: (i) the United States government; (ii) any governmental homeowner assistance plan; (iii) any Federal, State, or local government agency, unit, or department; (iv) any nonprofit housing counselor agency or program; (v) the maker, holder, or servicer of the consumer's dwelling loan, or (vi) any other individual, entity, or program; and

    D.    The consumer's obligation to make scheduled periodic payments or any other payments pursuant to the terms of the consumer's dwelling loan.

## COUNT VII

**(Failure to Disclose in General Commercial Communications)**

105.   In numerous instances since at least 2015, in the course of providing, offering to provide, or arranging for others to provide mortgage assistance relief services, Defendants have failed to make the following disclosures clearly and prominently in general commercial communications:

A.   "[American Home / Capital Home / National Advocacy] is not associated with the government, and our service is not approved by the government or your lender," in violation of Regulation O, 12 C.F.R. § 1015.4(a)(1); and

B.   "Even if you accept this offer and use our service, your lender may not agree to change your loan," in violation of Regulation O, 12 C.F.R. § 1015.4(a)(2);

## COUNT VIII

**(Failure to Disclose in Consumer-Specific Commercial Communications)**

106.   In numerous instances since at least 2015, in the course of providing, offering to provide, or arranging for others to provide mortgage assistance relief services, Defendants have failed to make the following disclosures clearly and prominently in consumer-specific commercial communications:

A.   "You may stop doing business with us at any time.  You may accept or reject the offer of mortgage assistance we obtain from your lender [or servicer].  If you reject the offer, you do not have to pay us.  If you accept the offer, you will have to pay us [insert amount or method for calculating the amount] for our services," in violation of Regulation O, 12 C.F.R. § 1015.4(b)(1);

29

B.   "[American Home / Capital Home / National Advocacy] is not associated with the government, and our service is not approved by the government or your lender," in violation of Regulation O, 12 C.F.R. § 1015.4(b)(2);

C.   "Even if you accept this offer and use our service, your lender may not agree to change your loan," in violation of Regulation O, 12 C.F.R. § 1015.4(b)(3); and

D.   "If you stop paying your mortgage, you could lose your home and damage your credit," in violation of Regulation O, 12 C.F.R. § 1015.4(c).

## CONSUMER INJURY

107.   Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act and Regulation O.  In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices.  Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

108.   Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC.  The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

109.   Section 626 of the Omnibus Act authorizes this Court to grant such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of Regulation O, including rescission or reformation of contracts and the refund of money.

## PRAYER FOR RELIEF

Wherefore, Plaintiff Federal Trade Commission, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), the Omnibus Act, and the Court's own equitable powers, requests that the Court:

A.   Award Plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action, and to preserve the possibility of effective final relief, including but not limited to a temporary and preliminary injunction, an order freezing assets, immediate access, and appointment of a receiver;

B.   Enter a permanent injunction to prevent future violations of the FTC Act and Regulation O by Defendants;

C.   Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act and Regulation O, including but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies;

D.   Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Dated: __4/11/18__

Respectfully submitted,

_____

ALDEN F. ABBOTT
Acting General Counsel

_Elsie B. Kappler_

ELSIE KAPPLER, pro hac vice
ekappler@ftc.gov
SANGJOON HAN, pro hac vice
shan@ftc.gov
FEDERAL TRADE COMMISSION
600 Pennsylvania Ave. NW, CC-9528
Washington, DC 20580
Tel: (202) 326-2466, -2495; Fax:
(202) 326-3197
BARBARA CHUN, Local Counsel,
Cal. Bar No. 186907
bchun@ftc.gov
FEDERAL TRADE COMMISSION
10990 Wilshire Blvd. Suite 400
Los Angeles, CA 90024Tel: (310)
824-4312; Fax: (310) 824-4380
Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

32

# Exhibit A

## Account Review Notice

Presorted Standard
U.S Postage
**PAID**
Sacramento, CA
Permit No. 1827

NOTICE REGARDING YOUR MORTGAGE LOAN



1*0*7***********SCH 5-DIGIT 32703

**TO BE OPENED BY ADDRESSEE ONLY**

WARNING: $2,000 FINE, 5 YEARS IMPRISONMENT, OR BOTH FOR ANY PERSON
INTERFERING OR OBSTRUCTING WITH DELIVERY OF THIS LETTER U.S. MAIL TTT. 18
SEC. 1702 U.S. CODE



Exhibit A

RE: ███████████



███████████

| Eligibility Code: | ███████████ |
|---|---|
| Contact: (800) 971-4~~259~~ | |
| Assigned Dept: HOME RETENTION | |

## ACCOUNT REVIEW NOTICE

A recent review of your property has determined that you may be eligible to receive immediate assistance. Your loan has been reviewed by our department and your current loan may be subject to a lower interest rate, principal reduction, HARP 2.9 Refinance, or Elimination of 2nd Mortgage.

Your current lender is one of the approved lenders authorized to offer aggressive loan workout options to qualified borrowers. This is a big incentive to help move loans to better programs.

Under the specifics of this program, your current mortgage would have a new monthly payment of ~~$554~~ or less.*

| MORTGAGE AMOUNT: | |
|---|---|
| NEW RATE: | 2.00% / 3.00% Fixed |
| NEW MORTGAGE PAYMENT: | ~~$555~~ |

This offer is good for 30 days and is subject to certain conditions. No other notice will be issues and no phone calls will be made to you.

## WHAT YOU NEED TO DO:

1. Locate your Reference Number : ███████████

2. Call Today: **(800) 971-425~~9~~**

3. Have your **Mortgage Statement** ready for verification purposes.

### Se Habla Española

This is not a commitment to lend. Restrictions apply. This information was obtained through public record sources. You may stop doing business with us anytime; you may accept or reject any offer of mortgage assistance. We are not an affiliate of your current lender or any government agency. Rates and terms are subject to change without notice. Not all applicants will qualify. If you stop making your mortgage payment, you may damage your credit and lose your home.

34

Exhibit A

# Exhibit B



---

## Home Loan Modification Process

---

**Tran Huynh** <thuynh@capitalhome.org>
To: ██████████@gmail.com

Tue, Oct 24, 2017 at 3:39 PM

████ ,

It was a pleasure speaking with you, Thank you for choosing **Capital Home Advocacy Center**

We are excited to start your Loan Restructure, we most definitely want to gain your trust and address all of your concerns. First and foremost our goal is **"To Place You In The Best Financial Position with your Lender"** The **"Traditional Home Loan Modification"** is specifically designed to give homeowners the help they need to get a *fresh start* with their mortgage. Our process normally can take anywhere from **30 to 90 days.**

We take every case very personal, we understand it is your home and we exhaust every avenue at our disposal to obtain a fresh start for our clients. **We have 98.9% approval rate with most Lenders**, Our Discovery Assessment department reviews your file first, your lender is called and we assure ourselves we are able to render you a positive outcome before accepting your file.

*Once your file is submitted to your lender, any negative action against your property will cease. Including auction of your property.*

You will be assigned a processor to work on your file; our processing team will keep you abreast of any actions taken on your case throughout this process.

Benefits you will receive:

### YOUR LOAN WILL BE REINSTATED

- We will negotiate your delinquent balance (to **reduce, or forgive all junk fees accumulated by your default**)

- We will negotiate your existent loan terms to better suit your present financial situation ( **reduce interest rate, reduced monthly payment** )

35

- If your property is underwater (balance is more than the property value) if you qualify for a Principal Balance Reduction, we will negotiate in your behalf

- **We will bring your account current**

To get a head start here's a List of the Documents we are going to need to move forward | Please complete documents along with the Attached PDF files above to: **Fax: 949-565-1321   Attn: Tran Huynh**

**Once we received them we will review with processing department to see if were able to accept your case for assistance.**

1.  **Mortgage statement**

2.  **Utility bill in your name (owners name )**

3.   **Proof of income (*30 Days*) (Recent Pay stubs – Award letters etc. Proof of disability Application and or Additional Income including family)**

4.  **Tax Returns | ( *2015 & 2016 all pages and sign page 4*)**

5.   **2 months of bank statements (*all pages*)**

6.  **Financial work sheet form (attached) (*please fill out with the best of your knowledge*)**

7.   **Hardship form (attached)**

8. **Third Party Borrower's Authorization (attached)**

*9. Dodd Frank Certification (attached)*

10. **4506-T (attached)**

11. **Waiver (attached)**

Our main Goal is **"To Place You in the Best Financial Position with your Lender"**

If you have any question please don't hesitate to call my office.

Warm Regards,

36

Tran Huynh

## Customer Service Department

## Contact: Fax/Phone  949.565.1321



## Capital Home Advocacy Center

**www.capitalhomeadvocacycenter.com**

1809 Dyer Rd. Suite #301

Santa Ana, CA  92705

Hours of Operation 6:00am to 7:00pm Pacific standard time



Please consider the environment before printing this email.
NOTICE: Nothing in this e-mail shall create an attorney-client relationship. Nothing sent to this office via e-mail shall constitute an attorney-client relationship. Nothing contained in this e-mail shall be construed to be a guarantee or prediction of result. This e-mail and any attachments thereto may contain information which is privileged and confidential, and is intended for the sole use of the recipient(s) named above. Any use of the information contained herein (including, but not limited to, total or partial reproduction, communication or distribution in any form) by persons other than the designated recipient(s) is strictly prohibited. If you have received this e-mail in error, please notify the sender either by telephone or by e-mail and delete the material from any computer. Thank you for your cooperation

---

**6 attachments**

 **DODD FRANK FORM.PDF**
156K

 **4506T2017.pdf**
725K

 **Waiver.pdf**
91K



74K

58K

53K

Exhibit B

https://mail.google.com/mail/?ui=2&ik=e0e118feeb&jsver=BNKYf1ymS-0.en.&view=pt...   10/24/2017

# Exhibit C

# M Gmail

████████ <████████@gmail.com>

---

## Home Affordable Program (documents needed)

---

Veronica Lopez <vlopez@nachelp.org>
To: ████████@gmail.com

Wed, Nov 1, 2017 at 7:44 PM

---

Dear Mr. ████████,

Thanks for speaking with me today. The "Making Home Affordable Program" is specifically designed to give homeowners the help they need to get a *fresh start* with their mortgage. Our process normally can take anywhere from 30 to 90 days.  The **past due balance will be placed at the end of your loan** as a deferred payment. We will **negotiate some of the past due to be forgiven**, **such as late fees, inspection fees, junk fees** etc… the **balance will be deferred with no interest**. Once we are done you will be able to resume your payments and get that fresh start you deserve.

You will be assigned a processor to work on your file; she will keep you abreast of any actions taken on your case throughout this process.    *Once your file is submitted to your lender, any negative action against your property will cease.*

Benefits you will receive:

- **YOUR LOAN WILL BE REINSTATED**

- We will negotiate your delinquent balance (to reduce, or forgive all junk fees accumulated by your default)

- We will negotiate your existent loan terms to better suit your present financial situation ( reduce interest rate, reduced monthly payment)

- If your property is underwater (balance is more than the property value) if you qualify for a Principal Balance Reduction, we will negotiate in your behalf

- We will bring your account current

39

The first steps to this process:  I will need a list of the documents  below  we will need in order for us to begin the process. Keep in mind that the more prepared you are, the faster you can get help. Gather the documentation such as a mortgage statement, your income, and the details of your current situation. With that information in hand we can determine a faster Results..

## PLEASE SEND THESE DOCUMENTS

1.   Mortgage statement

2.   Utility bill in your name

3.   Bank statements  2 months

4.   2015 and 2014 taxes or 2016

5.   Proof of income ( pay stubs, ssi award letter, disability etc…)

If you have any questions feel free to contact me.

Best Regards,

# VERONICA LOPEZ

CASE MANAGER | LOSS MITIGATION DEPARTMENT

HOME AFFORDABLE PROGRAM

TOLL FREE: 1-800-950-2818  Ext.632

DIRECT: (657) 777-4261 FAX:  (877) 595-3558

Email : vlopez@nachelp.org

Website: www.nationaladvocacycenters.org

IMPORTANT LEGAL NOTICE:

1. This is a private message and the information contained in this e-mail and accompanying attachment(s) are intended for the sole use of the addressee(s). If you are not the intended addressee, then you may neither use the information in the message nor any attachment(s).

2. In addition the information and attachments constitute confidential information, which may be legally privileged. If you are not the intended recipient, then any disclosure, copying, distribution or taking any action in reliance on this information is strictly forbidden and may be unlawful. This information is the property of National

40

Exhibit C

Gmail - Home Affordable Program (documents n   l)

Advocacy Center, a California Firm. If you have received this e-mail in error, please notify us immediately by return e-mail.

3. This e-mail transmission may not be secure and may be legally intercepted. Clients are asked to use their best judgment in determining if a more secure means of communication than e-mail is appropriate for replying to this message.

4. If you have received this email by mistake please forward to : Info@NationalAdvocacyCenter.org



Exhibit C

https://mail.google.com/...e0e118feeb&jsver=ZOgYGgvFjfY.en.&view=pt&msg=15f79f86de4f3a17&search=inbox&siml=15f79f86de4f3a17[11/2/2017 4:57:10 PM]

# Exhibit D

**Making Home Affordable Program**
**Request For Mortgage Assistance (RMA)**



MAKING HOME AFFORDABLE.GOV

If you are experiencing a financial hardship and need help, you must complete and submit this form along with other required documentation to be considered for foreclosure prevention options under the Making Home Affordable (MHA) Program. You must provide information about yourself and your intentions to either keep or transition out of your property; a description of the hardship that prevents you from paying your mortgage(s); information about all of your income, expenses and financial assets; whether you have declared bankruptcy; and information about the mortgage(s) on your principal residence and other single family real estate that you own. Finally, you will need to return to your loan servicer (1) this completed, signed and dated Request for Mortgage Assistance (RMA); and (2) completed and signed IRS Form 4506-T or 4506T-EZ; and (3) all required income documentation identified in Section 4.

When you sign and date this form, you will make important certifications, representations and agreements, including certifying that all of the information in this RMA is accurate and truthful.

## SECTION 1: BORROWER INFORMATION

| BORROWER | CO-BORROWER |
|---|---|
| BORROWER'S NAME | CO-BORROWER'S NAME |
| SOCIAL SECURITY NUMBER   DATE OF BIRTH (MM/DD/YY) | SOCIAL SECURITY NUMBER   DATE OF BIRTH (MM/DD/YY) |
| HOME PHONE NUMBER WITH AREA CODE | HOME PHONE NUMBER WITH AREA CODE |
| CELL OR WORK NUMBER WITH AREA CODE | CELL OR WORK NUMBER WITH AREA CODE |
| MAILING ADDRESS | MAILING ADDRESS (IF SAME AS BORROWER, WRITE "SAME") |
| EMAIL ADDRESS | EMAIL ADDRESS |

| | |
|---|---|
| Has any borrower filed for bankruptcy?   ☐ Chapter 7   ☐ Chapter 13<br>Filing Date: _____   Bankruptcy case number: _____<br>Has your bankruptcy been discharged?   ☐ Yes   ☐ No | Is any borrower a servicemember?   ☐ Yes   ☐ No<br>Have you recently been deployed away from your principal residence or recently received a permanent change of station order?   ☐ Yes   ☐ No |

How many single family properties other than your principal residence do you and/or any co-borrower(s) own individually, jointly, or with others? _____

Has the mortgage on your principal residence ever had a Home Affordable Modification Program (HAMP) trial period plan or permanent modification?   ☐ Yes   ☐ No

Has the mortgage on any other property that you or any co-borrower own had a permanent HAMP modification?   ☐ Yes   ☐ No   If "Yes," how many? _____

Are you or any co-borrower currently in or being considered for a HAMP trial period plan on a property other than your principal residence?   ☐ Yes   ☐ No

## SECTION 2: HARDSHIP AFFIDAVIT

**I (We) am/are requesting review under MHA.**
**I am having difficulty making my monthly payment because of financial difficulties created by (check all that apply):**

| | | | |
|---|---|---|---|
| ☐ | My household income has been reduced. For example: reduced pay or hours, decline in business or self employment earnings, death, disability or divorce of a borrower or co-borrower. | ☐ | My monthly debt payments are excessive and I am overextended with my creditors. Debt includes credit cards, home equity or other debt. |
| ☐ | My expenses have increased. For example: monthly mortgage payment reset, high medical or health care costs, uninsured losses, increased utilities or property taxes. | ☐ | My cash reserves, including all liquid assets, are insufficient to maintain my current mortgage payment and cover basic living expenses at the same time. |
| ☐ | I am unemployed and (a) I am receiving/will receive unemployment benefits or (b) my unemployment benefits ended less than 6 months ago. | Other: | |

Explanation (continue on a separate sheet of paper if necessary):

Page 1 | FAX back to: 1-866-798-0379

Exhibit D

# SCHEDULE OF PAYMENTS

National Servicing Center - 2112 E 4th St., Suite 230, Santa Ana, CA 92705 Ph :800-474-8410,  Fax: 866-798-0379

| CLIENT NAME: | ███████ |
|---|---|
| SOCIAL SECURITY NUMBER: | ██████ |
| CO-CLIENT NAME: | |
| SOCIAL SECURITY NUMBER: | |
| SUBJECT PROPERTY ADDRESS: | ████████████ |
| BEST CONTACT NUMBER: | |
| CASE MANAGER NAME: | SPRING KASPER |
| CASE # | ████ |

The following is a payment schedule for the preparation work and HAMP modification to be performed. It is agreed to and acknowledged that the client(s) will provide a deposit for final closing cost of listed amount for reduction of fixed interest rate, modified past due amount and or PRA.

> Contract Fee: $ 2,975.00

The cost of the program is: $ 4,575.00  less a suplemental credit $ 1,600.00    , your final processing fees are $ 2,975.00    plus convenience fees for payment options. This final closing amount will change if the total amount due is not paid in full by the date agreed on. All fees are standard for Fannie Mae and Freddie Mac Government Modifications.

| Payments | | | | |
|---|---|---|---|---|
| | Payment Date | Amount of Payment | Form of Payment | Initial |
| FIRST PAYMENT | 2/20/2015 | $ 1,125.00 | CHECK OR CERTIFIED FUNDS | |
| SECOND PAYMENT | 3/20/2015 | $ 1,125.00 | POST DATED CHECK | |
| THIRD PAYMENT | 4/20/2015 | $ 1,125.00 | POST DATED CHECK | |
| | | $ | | |
| | | $ | | |
| | | $ | | |

The above is an agreed upon amount and schedule for payments due under the Agreement with National Servicing Center
It is acknowledged that the above balance needs to be PAID IN FULL upon notification that the pertinent Services have been completed.
In the event of a declined payment, ALL WORK WILL STOP until paid in full with cash or cashier's check. Please make all payments payable to National Servicing Center.

SIGNATURE _____     DATE _____

SIGNATURE _____     DATE _____

Checks payable to "National Servicing Center".

☐ Payment via Check
   FedEx overnight - prepaid by National Servicing Center
   Please make check payable to "National Servicing Center"

Page 2 | FAX back to: 1-866-798-0379

Exhibit D



**National Servicing Center**

📞 (800) 474-8410    📠 (866)798-0379
✉ info@NationalServicingCenter.Net
🏠 2112 E 4th St. Suite 230, Santa Ana CA 92705

## AGREEMENT:  Document  Preparation

## CLIENT INFORMATION

BORROWER'S NAME                                    CO-BORROWER'S NAME

SUBJECT PROPERTY

## AGREEMENT

National Servicing Center hereby agrees to provide document preparation products for Client(s). National Servicing Center will utilize its resources, industry experience, and contacts to compose a comprehensive financial application. The application package will be based on the documentation provided by the Client(s). This documentation provided by you will include the following financial information; mortgage, personal, and all other "necessary" applicable items. This documentation is needed to compose the application in a complete and professional manner. By signing below the Client(s) understand(s), acknowledge(s), and agree(s) that National Servicing Center does not guarantee results in conjunction with this document preparation services.

Client(s) will pay a fee of $ 2975.00  to National Servicing Center in exchange for its documentation preparation products. This fee is due after the file has been reviewed by staff and, or, management for approval eligibility. Upon receiving payment, the requested documentation and signed application, National Servicing Center will begin the preparation of the file. In the event the lender declines your document submission for a modification, forbearance, trial into modification or repayment plan, injunction with the document preparation, you will receive a refund. Client(s) is(are) responsible for full payment to National Servicing Center if your lender accepts the prepared documents and the review process is initiated by your lender for modification, forbearance, trial into modification or repayment plan. If Client(s) decline(s) offer no refund is deserved or forth coming.

Client(s) agrees to cooperate with National Servicing Center with regard to providing information, documents and any other information needed by National Servicing Center to perform the products set forth in this agreement. This information includes but is not limited to: copy of valid driver's license, the most current versions of pay roll stubs, tax returns, bank statements, retirement accounts, mortgage statements, mortgage notes, property tax bill, homeowners insurance, household bills, original loan application, mortgage note and HUD-1 document.

Client(s) acknowledge(s) and agree(s) that the fee is considered earned by National Servicing Center upon the completion of the prepared documentation. This fee is not contingent upon any results for any process initiated by the Client(s) to their prospec- tive lender(s).

The obligation of National Servicing Center to perform "services" for Client(s) is conditioned on the performance by Client(s) of providing complete and truthful information in a timely manner. If the Client(s) fails to perform, then National Servicing Center will have no further obligation whatsoever. The parties agree that any damages claimed by either party are limited to the amount of the Client(s)'s fee in all cases.

This contract contains the entire agreement between National Servicing Center and Client(s) concerning the rights granted and the obligations assumed in this contract. Client(s) may cancel or rescind this contract without penalty or obligation within.

## DISCLOSURE

Your lender's normal collection proceedings will continue through the document preparation process. National Servicing Center advises all Clients that all payments should be made in accordance with their lender's instructions.

## TERMS

I have read, reviewed and agree to the terms and conditions of this agreement. I understand and am aware of the parameters, requirements and conditions set forth by this agreement.

BORROWER                          CO-BORROWER              44              DATE

**☎** (866) 827 1968   **📠** (866) 798 0379
**✉** info@NationalServicingCenter.net
**⌂** 2112 E 4th St, Suite 230, Santa Ana CA 92705



# National Servicing Center

## AUTHORIZATION: Third Party Authorization

## CLIENT INFORMATION

DATE SIGNED                    DATE FAXED                    DATE CONFIRMED

SERVICING COMPANY                              LOAN NUMBER

BORROWER'S NAME                                CO-BORROWER'S NAME

BORROWER'S SSN                                 CO-BORROWER'S SSN

HOME PHONE NUMBER          MOBILE PHONE NUMBER          OTHER PHONE NUMBER

SUBJECT PROPERTY ADDRESS

MAILING ADDRESS (IF DIFFERENT FROM ABOVE)

AUTHORIZED REPRESENTATION

AUTHORIZED REPRESENTATION

AUTHORIZED REPRESENTATION

Dear Mortgage Servicer,

This correspondence is meant to serve as my/our personal, written authorization that I/we, the mortgagor(s), regarding the above referenced subject property address, do herby grant National Servicing Center, and all authorized agents therein, the permission to discuss all current and future matters related to the **above** mortgage **loan** number(s).

Moreover, the company's contact information is indicated in the above header for clarification and verification purposes. Please note, that this letter of authorization is set to expire six (6) months from the date signed hereto.

BORROWER'S SIGNATURE                                        DATE

CO-BORROWER'S SIGNATURE                                     DATE

Exhibit D

# Exhibit E

## ELIGIBILITY CONFIRMATION

**To:** ███████████          **Date:** August 3, 2015

**Subject:** Case ID ██████

You are confirmed for the following government program, **HAMP** (Home Affordable Modification Program) & **PRP** (Principle Reduction Program)

This Federal Program introduced by the Obama Administration is intended to help stabilize the real estate housing market and help struggling homeowners get relief and avoid FORECLOSURE.

- Not a Re-finance
- This is a restructure of your existing loan
- No Appraisal required
- No credit requirements
- Loan term length remains the same
- Loan servicer remains the same
- Investor remains the same
- Your investor and servicing bank will recoup the loss from your loan restructure from a government TARP fund because you meet the guidelines for this government program.

The **Troubled Asset Relief Program (TARP)** is a program of the United States government to purchase assets and equity from financial institutions to strengthen the financial sector and it is a component of the government's measures to address the subprime mortgage crisis. The TARP program authorized expenditures of $700 billion.

|  | Current Loan Payment | New Estimated Payment PITI |
|---|---|---|
| Monthly Payment | $ 1,732.76 | $ 1,193.35 |

To move forward you will need to make the choice, and not make **AUGUST & SEPTEMBER** mortgage payments to meet the **"imminent default"** requirement for this program.

The process from beginning to end takes approximately 3-4 months and your estimated program award date is **NOVEMBER 1st 2015.** The following items MUST be maintained throughout the process...

1. Maintain your financial situation.
2. Send updated documents to the processing department in a timely manner (i.e., updated bank statements, paystubs, last 2 years tax returns, hardship letter, etc...).
3. 3 trial payments, with new payment, to be made on time. Once finalized you will be on a trial payment period with your "new restructured payment" for 3 months. This payment will be due on the 1st of every month with a 15 day grace period. This trial period (3 new payments/3 months) will be required to be made within that time frame to be considered on time.

**What you need to do**
Instead of your normal monthly payments, you must pay the exact amount of your Trial Period Plan payments. In order to receive your permanent loan restructure it is very important that you make your payments on time.

| Trial Period Plan | | | |
|---|---|---|---|
| 1st payment: | $ 1,193.35 | estimated due date | 11/1/2015 |
| 2nd payment: | $ 1,193.35 | estimated due date | 12/1/2015 |
| 3rd payment: | $ 1,193.35 | estimated due date | 1/1/2016 |

After you make all trial payments on time, this loan restructure will be permanent.

## Carol Simmons

**Senior Underwriter| Legal Processing Department**
*Home Affordable Government Program*
Fax: 866.798.0379
Email : CSimmons@AM-SC.COM
Website : AM-SC.COM

  

Exhibit E

# Exhibit F

## Proprietary form used for consumer results

| | |
|---|---|
| Date: | ▮▮▮▮ |
| Loan Number: | ▮▮▮▮ |
| Loan Serviced by: | Bank of America |
| CASE ID # : ▮▮▮▮ | Time of Review:   August 3, 2015          10:00 A.M. |

### Eligibility Confirmation

Eligible for:   **HAMP**

**PRP**            You meet the following criteria.

- The mortgage cannot have been refinanced under HAMP previously unless it is a Fannie Mae loan that was refinanced under HAMP from March-May, 2009
- The current Debt-to-income(DTI) must be between 31%-65%
- Current DTI is :   45%
- Current loan to value (LTV) is over 80%
- The borrower does not need to be current on the mortgage at the time of the modification (any past due amount will be included in loan restructure.)
- FINALIZED CLOSING COSTS WILL BE IN THE AMOUNT OF $4,595.00 FOR 1st MORTGAGE. *with payment options see details below. (Legal processing fees & Underwriting)

**Eligible for HAMP and PRP modification on 1st lien.**

| | | | | | |
|---|---|---|---|---|---|
| Loan owned by F.M. : | N | Total Loan Balance : | $    236,331.07 | Loan to Value > 80% : | YES |
| Loan originated before 2009: | YES | New Interest Rate: | 2.0 FIXED RATE | Loan to Value: | 126.0% |
| Appraisal required: | NO | New Principle & Interest: | $       688.66 | Appraised Value : | $    186,317.00 |
| Credit approval required: | NO | Prop. Tax & Insurance: | $       504.69 | Negative Equity: | $     (50,014.07) |
| New Loan Term: | REMAINS SAME | New estimated Payment (PITI): | $     1,193.35 | PRP Maximum: | $      50,014.07 |

| 15 YR Savings Chart | Total Monthly Payments PITI | Total 1 YR Payments PITI | Total 5 YR Payments PITI | Total 10 YR Payments PITI | Total 15 YR Payments PITI |
|---|---|---|---|---|---|
| Old payment | $        1,732.76 | $        20,793.12 | $        103,965.60 | $        207,931.20 | $        311,896.80 |
| New Modified Payment | $        1,193.35 | $        14,320.20 | $        71,601.00 | $        143,202.00 | $        214,803.00 |
| Total Savings | $           539.41 | $          6,472.92 | $          32,364.60 | $          64,729.20 | $          97,093.80 |

*Closing Costs total $4,595.00 with 3 payment options.                  ○ Closing Costs cannot be added to principle balance due to LTV ratio.

*Supplemented  credit $1,600.00                                                    ○ Tier 2 fee schedule.

· Option A, onetime payment $2,995.00.

· Option B, two payments of $1,597.50 each 30 days apart for a total of $3,195.00    (Option B includes $200 convenience fee).

· Option C, Three payments of $1,131.67 each 30 days apart for a total of $3,395.00    (Option C includes $400 convenience fee).

_____          _____
Borrower                            Date                     Borrower                            Date

**This form is required to be submitted to processing as part of submission documents.**

Exhibit F