DAVID R. ZARO (BAR NO. 124334)
TED FATES (BAR NO. 227809)
ALLEN MATKINS LECK GAMBLE
   MALLORY & NATSIS LLP
865 South Figueroa Street, Suite 2800
Los Angeles, CA 90017-2543
Phone: (213) 622-5555
Fax:   (213) 620-8816
E-Mail: dzaro@allenmatkins.com
        tfates@allenmatkins.com

Attorneys for Court-appointed Receiver
KRISTA L. FREITAG

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN HOME SERVICING CENTER, LLC,<br><br>CAPITAL HOME ADVOCACY CENTER, LLC,<br><br>NATIONAL ADVOCACY CENTER, LLC,<br><br>JAIME ABERTO, a/k/a James Aburto and Jamie Aburto, individually, as an officer of American Home Servicing Center, LLC and National Advocacy Center, LLC, and d/b/a A.H.S.C, American Home Servicing Center, Local Page, NAC, National Servicing Center, NSC Processing, and Secured Processing,<br><br>MARCUS FIERRO, JR., individually, as a member of American Home Servicing Center, LLC and National Advocacy Center, LLC, and d/b/a A.H.S.C. and American Home Servicing Center, | Case No. SACV 18-00597-JLS-KESx<br><br>**NOTICE OF MOTION AND MOTION TO CONCLUDE RECEIVERSHIP AND FOR ORDER: (1) APPROVING FINAL ACCOUNTING AND REPORT; (2) APPROVING DISPOSITION/TRANSFER OF BOOKS AND RECORDS; AND (3) DISCHARGING RECEIVER; RECEIVER'S FINAL ACCOUNTING AND REPORT**<br><br>Date: December 14, 2018<br>Time: 2:30 p.m.<br>Ctrm.: 10A<br>Judge: Hon. Josephine L. Staton |

| | |
|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9 | EVE CHRISTINE RODRIGUEZ, a/k/a Elizabeth Davis, Elizabeth Powers, Christina Rodriguez, Christine Rodriguez, and Elizabeth Rodriguez, individually, as a manager of American Home Servicing Center, LLC, a member of Capital Home Advocacy Center, and d/b/a National Advocacy Group,<br><br>And SERGIO LORENZO RODRIGUEZ, a/k/a Sergio Lawrence, individually, as a manager of American Home Servicing Center, LLC, a member of Capital Home Advocacy Center, and d/b/a National Advocacy Group,<br><br>           Defendants. |

**TO THE HONORABLE JOSEPHINE L. STATON, JUDGE OF THE UNITED STATES DISTRICT COURT, AND ALL INTERESTED PARTIES:**

**PLEASE TAKE NOTICE** that on December, 2018, at 2:30 p.m. in Courtroom 10 of the above-entitled Court, located at 411 West 4th Street, Room 1053 Santa Ana, CA 92701-4516, Krista L. Freitag ("Receiver"), the Court-appointed permanent receiver for American Home Servicing Center, LLC ("American Home"), Capital Home Advocacy Center ("Capital Home"), National Advocacy Center, LLC ("National Advocacy"), and their subsidiaries and affiliates (collectively the "Receivership Entities" or individually, a "Receivership Entity"), will and hereby does move the Court to conclude the receivership and for an order, (1) approving the final accounting and report; (2) approving disposition/transfer of books and records; and (3) discharging the Receiver ("Motion"). The Motion and relevant pleadings are available at the Receiver's website, http://www.ethreeadvisors.com/ftc-case-docs/ftc-capital-home/.

**Procedural Requirements:** If you oppose this Motion, you are required to file your written opposition with the Office of the Clerk, United States District Court, 411 West 4th Street, Room 1053 Santa Ana, CA 92701-4516, and serve the same on the undersigned not later than 21 calendar days prior to the hearing.

IF YOU FAIL TO FILE AND SERVE A WRITTEN OPPOSITION by the above date, the Court may grant the requested relief without further notice. This Motion is made following the conference of counsel pursuant to L.R. 7-3.

Dated: October 5, 2018

ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP

By: */s/ Edward Fates*
EDWARD G. FATES
Attorneys for Court-appointed Receiver KRISTA L. FREITAG

# TABLE OF CONTENTS

**Page**

I. RECEIVER'S FINAL ACCOUNTING AND REPORT ................................. 2
   A. Background and Business Assessment ........................................ 2
   B. Asset Disposition and Recovery ................................................. 5
   C. Receiver Reporting and Communications .................................. 6
   D. Receivership Accounting ............................................................ 8
II. CLOSING MATTERS .............................................................................. 8
   A. Payment of Outstanding Costs .................................................... 8
   B. Disposition/Transfer of Records ................................................. 9
   C. Discharge of Receiver ................................................................. 9
III. ARGUMENT ........................................................................................... 10
   A. Broad Equitable Powers of the Court ....................................... 10
   B. Conclusion of Receivership and Discharge of Receiver .......... 11
IV. CONCLUSION ....................................................................................... 12

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

876680.01/SD

(i)

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Commodities Futures Trading Comm'n. v. Topworth Int'l, Ltd.*,
   205 F.3d 1107 (9th Cir. 1999) .................................................................. 10

*First Empire Bank-New York v. FDIC*,
   572 F.2d 1361 (9th Cir. 1978) .................................................................. 11

*SEC v. Capital Consultants, LLC*,
   397 F.3d 733 (9th Cir. 2005) .................................................................... 10

*SEC v. Elliot*,
   953 F.2d 1560 (11th Cir. 1992) ................................................................ 10

*SEC v. Hardy*,
   803 F.2d 1034 (9th Cir. 1986) ............................................................ 10, 11

*SEC v. Wencke*,
   622 F.2d 1363 (9th Cir. 1980) .................................................................. 10

**Statutes**

12 U.S.C. § 3758 ................................................................................................ 7

# MEMORANDUM OF POINTS AND AUTHORITIES

Krista Freitag, the Court-appointed Receiver herein, respectfully submits this Memorandum of Points and Authorities in Support of her motion to conclude the receivership and: (1) approving the final accounting and report; (2) approving disposition/transfer of books and records; and (3) discharging the Receiver ("Motion").

The Receiver has completed managing, monetizing recoverable assets of the receivership estate, has determined no significant recovery of additional assets is likely and has a plan to transfer access to records in possession of the Receiver, as appropriate. As such, the Receiver is prepared to close the receivership estate.

Unfortunately, the assets of the Receivership Entities had very little value such that there are insufficient funds to pay approved administrative expenses of the receivership and no funds available to make distributions to consumers, former employees, or other creditors. The Receiver has recovered a total of $22,819. For the time period of April 13, 2018 to May 31, 2018, the Receiver's fees and costs, including forensic imaging costs, amount to $66,726.36. Fees and costs for the Receiver's counsel during the same time period amount to $34,241.55. A small portion of these fees and costs were paid *pro rata* from funds recovered by the Receiver pursuant to the Court's order approving the First Interim Fee Applications. Dkt. No. 123. A total of $22,130 was paid pursuant to the order, leaving $689 cash on hand in the receivership estate at this point. The Receiver and her counsel have not sought approval of further fees incurred since May 31, 2018 due to the lack of available funds to pay the amounts in their First Interim Fee Applications.

The relief sought herein will allow the Receiver to take the remaining steps necessary to conclude the receivership, which, because the underlying litigation is still ongoing, includes transferring access for National Advocacy and Capital Home records to the FTC and Capital Home records to Defendants Sergio Rodriguez and Eve Christine Rodriguez (if not already completed).

## I. RECEIVER'S FINAL ACCOUNTING AND REPORT

### A. Background and Business Assessment

On April 13, 2018, this Court entered the Ex Parte Temporary Restraining Order with Asset Freeze, Appointment of Temporary Receiver, Limited Expedited Discovery, and Order to Show Cause Why Preliminary Injunction Should Not Issue (the "TRO"), appointing Krista L. Freitag ("Receiver") as temporary receiver for American Home Servicing Center, LLC ("American Home"), Capital Home Advocacy Center ("Capital Home"), National Advocacy Center, LLC ("National Advocacy"), and their subsidiaries and affiliates (collectively the "Receivership Entities" or individually, a "Receivership Entity") with full powers of an equity receiver.

On April 27, 2018, this Court entered the Preliminary Injunction with Asset Freeze, Appointment of Receiver, Limited Expedited Discovery, and Other Equitable Relief, as to American Home, Capital Home, National Advocacy, and Marcus Fierro, (the "First PI Order"). The First PI Order makes the Receiver's appointment for the Receivership Entities permanent. On June 12, 2018, this Court entered the Preliminary Injunction with Asset Freeze, Limited Expedited Discovery, and Other Equitable Relief, as to Defendants Eve Christine Rodriguez and Sergio Lorenzo Rodriguez (the "Second PI Order").

Pursuant to the TRO, PI Orders and law governing federal equity receivers, the Receiver was charged with, among other things, assuming control over the Receivership Entities and their assets ("Receivership Assets").

Promptly upon her appointment, the Receiver served banking institutions and successfully obtained possession of and secured the following two physical locations associated with the operations of Capital Home and National Advocacy:[1]

---

[1] No known operational locations of American Home were located.

1.  1809 East Dyer Road, Suite 301, Santa Ana, CA 92705, and
2.  15991 Red Hill Avenue, Suite 204, Tustin, CA 92780 (including the 333 City Blvd. West, 17th Floor, Orange, CA 92868 virtual office location where it appears mail was directed and received).

The bank accounts listed in the TRO and additional accounts identified through an investigation of documents and information found at the locations where the Receivership Entities conducted business were frozen. Based on the Receiver's investigation of documents and computer records, the Receiver was able to identify and take control of approximately $5,230 in National Advocacy cash and $3,713 in Capital Home cash.

With regard to each of the foregoing locations, the Receiver took physical control, changed the locks, served/notified landlords, served/notified vendors and otherwise worked to ensure no entry into the premises. The Receiver's staff also redirected and monitored mail for eight (8) known current or prior operations addresses.

Upon entry to the Capital Home office premises, the Receiver, her staff and her counsel met with and interviewed the 13 employees, consultants, and others who were present, including defendant Eve Christine Rodriguez. The Receiver took control over computers and electronic devices located at the office premises, as well as any off-site electronic records. Pursuant to the TRO, the Receiver granted access to certain computer drives to the FTC and also retained the services of SETEC Investigations to image the computers located at the office premises which images were not otherwise taken by the FTC. This work involved imaging the hard drives from each of the computers in order to preserve all e-mails, documents, and accounting information maintained on the devices.

Regarding National Advocacy, after locating and securing the office premises on the afternoon of Friday, April 20, 2018, the Receiver met SETEC to retrieve all hard drives and the server from the premises for safeguarding and for imaging if

sufficient resources became available to do so.  It is important to note that the employees of National Advocacy appear to have intentionally left the premises and abandoned the business shortly before the Receiver arrived at the office on April 20, 2018, so no employee interviews occurred.

Numerous documents and records (including electronic forms thereof) were secured in the office premises and/or were otherwise secured.  Said physical records from both office premises were securely transferred to the possession of the Federal Trade Commission and access thereto granted to defendants Eve Christine Rodriguez and Sergio Rodriguez.  Access to electronic customer relations management records of Capital Home were also provide to the FTC and defendants Eve Christine Rodriguez and Sergio Rodriguez.

Based on records obtained through the Capital Home customer relations management ("CRM") software, it appeared that the Capital Home Senior Processors' (employed as of April 16, 2018) files included approximately 125 active consumer accounts.  The Receiver sent communications to the known Capital Home consumers and lenders, directing them to communicate directly with one another and/or referring consumers to free mortgage counseling resources available through HUD.  And although its CRM software company and other vendors (discovered Friday, April 20, 2018) were served with the TRO, the Receiver has been unable to recover any consumer account information for National Advocacy because such information is maintained at a third-party vendor under Jaime Aburto's name.

From records obtained at Capital Home, it was clear that Defendants Capital Home, Christine Rodriguez and Sergio Rodriguez required consumers to make payments to them before consumers' loan modification applications were submitted to their lenders and well before loan modifications were granted (if at all) by the lenders.  Accordingly, and with no financial resources or legal source of operating income available to fund any level of operations (including payment of rent, utilities, past-due payroll/current payroll, etc.), the Receiver determined the business could

not be operated at all, let alone operated lawfully and profitably. Therefore, the Receiver did not retain any of the Capital Home employees and ceased operations.

Furthermore, to minimize accruing expenses in light of minimal receivership estate resources, the Receiver and her staff worked quickly and diligently to box up and secure records, to monetize the minimal value in personal property, and to turn over the spaces to landlords.

### B. Asset Disposition and Recovery

Other than the funds recovered as described herein and a few remaining items of personal property, no additional Receivership Entity funds or assets appear available for recovery. No real property has been identified and aside from the account balances referenced above, all other accounts identified in the TRO or otherwise discovered by the Receiver were either closed or had a zero balance. Regarding personal property, a few items remain to be sold in the next 15 days. The possible range of recovery from these items is expected to be $100 to $600.

It is important to note that in addition to the FTC's transmittal of notice of the asset freeze to the banks, the Receiver promptly notified each bank identified in the TRO as having an account associated with the Receivership Entities. In such notices, the Receiver demanded turnover of the account, immediate cancellation of any debit or credit cards, identification/freeze of any safe deposit box, account balance information, and account records. The total cash balances in accounts at takeover are reflected in the following table.

<mark>

| **BANK BALANCES AT TAKEOVER**: | |
|---|---|
| Capital Home | $ 3,712 |
| National Advocacy | $ 5,230 |
| **TOTAL**[2] | $ 8,942 |

Regarding personal property, electronic inventories were taken, and the personal property consisted of CPUs, computer monitors, cubicles, and other miscellaneous office furniture (e.g., Ikea), fixtures and equipment, all of little resale value. With no money to pay rent, storage, or even to move out of nearly 9,000 square feet of office space (it was estimated that a move would cost between $10,000 and $15,000), the Receiver, through her staff, reached out to several professional, local auction companies and provided electronic inventories to them to determine an approximate value for the personal property. The auctioneers expressed that the market for general office equipment was very low and one commented that he would likely monetize the cubicles and file cabinets for scrap metal value. Ultimately, it was determined that the best approach would be to have the auction company purchase the vast majority of the personal property because they would necessarily take on the costs of moving the personal property. The best offer received was from one auction company that was willing to vacate the offices in exchange for paying the estate $1,500. It is also important to note that removing the personal property swiftly from the office allowed the Receiver to negotiate with the landlord for a recovery of the $6,295 deposit on the Capital Home office lease, despite the fact the lease was terminated before the end of the lease term.

### C. Receiver Reporting and Communications

At the beginning of the receivership, the Receiver established a dedicated web page, which has provided case information and updates for access by consumers,

---

[2] The entire balances in the Capital Home and National Advocacy Accounts were transferred to the Receivership Estate's Operating Account.

</mark>

employees and lenders.  The internet address for the webpage is http://www.ethreeadvisors.com/ftc-case-docs/ftc-capital-home/.  The Receiver also maintained a dedicated email address and telephone line for consumer inquiries.  As previously mentioned, the Receiver was forced to cease operations and thus communicated with known consumers and lenders, directing them to communicate directly with one another and/or referring consumers to free mortgage counseling resources available through HUD.  This ongoing directive has occurred as applicable email, telephone or mail correspondence has been received.  It is important to note that if any payments were received, all payments were returned to the payors.

As noted above, the Receiver has notified the applicable lenders that Capital Home is no longer operating and that they must communicate directly with their borrowers as to all issues relating to loans on which Capital Home was working.  Out of an abundance of caution, the Receiver recently sent an additional correspondence to the lenders repeating this same directive, and letting them know any/all Capital Home and National Advocacy mail will not be deliverable and will be returned to sender.  The Receiver has also told consumers/borrowers that they must communicate with their lenders directly and has posted the same directive prominently on the receivership website.  The Receiver is hopeful that these communications and notices will result in lenders and consumers/borrowers communicating with each other directly and lenders sending notices directly to consumers/borrowers.  However, at the very least, lenders must provide notices to consumers/borrowers directly before they can commence a foreclosure.  *See* 12 U.S.C. § 3758 (requiring that notice of a foreclosure be sent by certified or registered mail to the owner of record of the property and all borrowers or "mortgagors" on mortgage debt).

### D. Receivership Accounting

The following summary reflects the bank account balances in the receivership estate bank accounts as of September 30, 2018:

| RECEIVERSHIP ESTATE BANK BALANCES: | |
|---|---|
| Receivership Estate Operating Account | $ 690 |

The following is a summary of the cash activity in the receivership estate bank accounts for the period from April 16, 2018 through October 4, 2018:

| RECEIVERSHIP ESTATE CASH ACTIVITY: | |
|---|---|
| Pre-Receiver Operating Account Funds | $ 8,942 |
| Recovery – Petty Cash/Vending Cash | $ 569 |
| Recovery – Lease Security Deposit | $ 6,295 |
| Recovery – Utility Security Deposit | $ 3,248 |
| Recovery – Sergio Rodriguez Partial Return of Funds | $ 1,576 |
| Recovery – Personal Property Proceeds[3] | $ 2,190 |
| Forensic Computer Imaging Expense Paid | ($ 13,257) |
| Receiver Fees & Expenses Paid | ($ 5,822) |
| Receiver Counsel Fees & Expenses Paid | ($ 3,051) |
| Cash Balance as of October 4, 2018 | $ 690 |

## II. CLOSING MATTERS

### A. Payment of Outstanding Costs

As noted above, the receivership estate currently holds $690. The Receiver also expects to recover an additional $100 to $600 for the few remaining items of personal property. Since May 31, 2018, the Receiver has incurred additional costs

---

[3] This does not include the few remaining items of personal property expected to produce an additional $100 to $600 recovery.

totaling $1,603.61 for returning checks to consumers, renewing the email accounts for Capital Home (because of the ongoing litigation) and updating the website that provides information to consumers and other interested parties. Accordingly, the Receiver respectfully requests authority to partially reimburse herself for these costs with the $690 remaining in the estate plus whatever small amount is recovered from the few remaining items of personal property.

### B.     Disposition/Transfer of Records

As previously mentioned, all physical files obtained at the Capital Home and National Advocacy premises were turned over to the FTC and made available to defendants Eve Christine Rodriguez and Sergio Rodriguez. The aforementioned parties have also been provided access to the Capital Home CRM records. Possession of the hard drives obtained at the National Advocacy premises has been securely transferred to the FTC.

The FTC has access to email records for Capital Home and National Advocacy through the aforementioned hard drive data they possess. Control over the Capital Home email account, which was renewed by the Receiver for one year in September 2018, will then be given to Defendant Sergio Rodriguez as the owner of Capital Home. With regard to National Advocacy emails, the Receiver did not gain administrative access over the account, which was in the name of Jamie Aburto.

### C.     Discharge of Receiver

The Receiver has taken all appropriate steps to preserve and recover value from the limited assets of the Receivership Entities. The Receivership Entities' assets were marshalled, protected, and monetized to the extent possible. Unfortunately, the value of such assets was so limited that the fees and costs of the Receiver and her professionals will go largely unpaid and no funds are available to distribute to consumers, former employees, or other creditors. As such, it is appropriate for the Receiver to ask the Court to enter an order discharging her.

## III. ARGUMENT

### A. Broad Equitable Powers of the Court

"The power of a district court to impose a receivership or grant other forms of ancillary relief does not in the first instance depend on a statutory grant of power from the securities laws. Rather, the authority derives from the inherent power of a court of equity to fashion effective relief." *SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980). The "primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986). As the appointment of a receiver is authorized by the broad equitable powers of the Court, any distribution of assets must also be done equitably and fairly. *See SEC v. Elliot*, 953 F.2d 1560, 1569 (11th Cir. 1992).

District courts have the broad power of a court of equity to determine the appropriate action in the administration and supervision of an equity receivership. *See SEC v. Capital Consultants, LLC*, 397 F.3d 733, 738 (9th Cir. 2005). As the Ninth Circuit explained:

> A district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad. The district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership. The basis for this broad deference to the district court's supervisory role in equity receiverships arises out of the fact that most receiverships involve multiple parties and complex transactions. A district court's decision concerning the supervision of an equitable receivership is reviewed for abuse of discretion.

Id. (citations omitted); *see also Commodities Futures Trading Comm'n. v. Topworth Int'l, Ltd.*, 205 F.3d 1107, 1115 (9th Cir. 1999) ("This court affords 'broad deference' to the court's supervisory role, and 'we generally uphold reasonable procedures instituted by the district court that serve the[e] purpose' of orderly and efficient administration of the receivership for the benefit of creditors."). Accordingly, the

Court has broad equitable powers and discretion in the administration of the receivership estate and disposition of receivership assets.

### B. Conclusion of Receivership and Discharge of Receiver

Federal District Courts presiding over federal equity receiverships have broad power and wide discretion in the supervision of the same. *SEC v. Hardy*, 803 F.2d 1034, 1037-38 (9th Cir. 1986). Their power and discretion includes the authority to "make rules which are practicable as well as equitable." *Id.* at 1039 (quoting *First Empire Bank-New York v. FDIC*, 572 F.2d 1361, 1368 (9th Cir. 1978)). In this case, the Court's supervision of the receivership is guided by these same rules.

The Receiver has diligently carried out her Court-ordered duties, including assuming control of enterprises and their records (such records have or will be transferred as presented herein), marshalling and selling assets to the extent possible, and providing reports to the Court. As there is no further benefit to be gained from maintaining this receivership, with no ability to legally or profitably operate and with no resources to otherwise operate, the Receiver requests that she be discharged and the case be closed.

The Receiver, therefore, requests an order discharging and fully releasing her and her counsel of: (i) all duties under the TRO and PI Orders, and (ii) any and all claims and liabilities associated with the case and the Defendants. In addition, the Receiver asks the Court to approve and ratify all actions taken by the Receiver and her professionals in the performance of the Receiver's Court-ordered duties. The Receiver further requests the Court retain exclusive jurisdiction over any and all new actions or claims related to the receivership or work done by the Receiver and her professionals to carry out the Receiver's Court-ordered duties.

## IV. CONCLUSION

For the foregoing reasons, the Receiver respectfully requests the Court grant the Motion and issue the proposed order discharging the Receiver submitted herewith.

Dated: October 5, 2018

By: *[signature]*
KRISTA L. FREITAG
Receiver

Dated: October 5, 2018

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP

By:   */s/ Edward Fates*
EDWARD G. FATES
Attorneys for Receiver
KRISTA L. FREITAG